**NEWMAN WILLIAMS**
A PROFESSIONAL CORPORATION

BY: GERARD J. GEIGER, ESQUIRE
IDENTIFICATION NO. PA 44099
LAW OFFICES
712 MONROE STREET
P.O. BOX 511
STROUDSBURG, PA 18360-0511
(570) 421-9090 (voice)
(570) 424-9739 (fax)
ggeiger@newmanwilliams.com

ATTORNEY FOR: Arkadiasz Martynowicz; Garry Haidle, Gregory Armond, Joseph McCoy, Mario Orlando, Curtis Rogers, Matthew Bernal and Monroe County District Attorney's Office

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HASSAN ALI HAYWOOD, Plaintiff, <br><br> v. <br><br> C.O. MARTYNOWICZ, et. al. Defendants | No. 3:18-CV-00610 <br><br> Jury Trial Demanded <br><br> Judge Brann |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

# I. Procedural History

On March 16, 2018, Haywood filed his §1983 pro se civil rights lawsuit relating to events which occurred during his incarceration at the Monroe County Correctional Facility (MCCF).

After obtaining leave to amend, on June 5, 2019, Haywood filed a Second Amended Complaint (ECF No. 55), which is the subject of this motion to dismiss.

1

Concurrently with this supporting brief, Defendants filed a Rule 12(b)(6) motion to dismiss.

## II. Facts

These "facts" are taken from Haywood's second amended complaint.

Haywood was formerly incarcerated at the Monroe County Correctional Facility (MCCF). He alleges that on August 4, 2016, he was involved in a fight with fellow inmates. The staff charged him with misconduct for the fight. At his disciplinary board hearing, he told the board that he was innocent and that the other inmates attacked him. Deputy Warden Joseph McCoy told the board that he reviewed the video footage of the incident and decided that Haywood was guilty.

The disciplinary board found him guilty and sentenced him to 37 days in the Restricted Housing Unit (RHU). He had also been placed in administrative segregation for another 3 weeks after completing his RHU punishment. Second Amended Complaint, ¶20. It was a total of two months after the fight that he was returned to general population.

Haywood claims that while in RHU, he was denied phone and visitation privileges with his family and lawyer. Second Amended Complaint, ¶18. He alleges he "was deprived of his commissary causing him

to starve"[1] and that he was cuffed and shackled when taking recreation, showering and using the MCCF's law library. Second Amended Complaint, ¶19.

Haywood claims he tried to challenge the misconduct but was denied grievance forms.

On May 5, 2017, criminal charges for inciting a riot and assault were filed against Haywood in the Monroe County Court of Common Pleas following an investigation by County detective, Mario Orlando. The charges were approved and prosecuted by Monroe County Assistant District Attorneys, Curtis Rogers and Matthew Bernal, whom Haywood named as defendants. At a preliminary hearing, District Justice Krawitz bound over the assault charge but dismissed the Riot charge.

On December 1, 2017, Common Pleas Judge Higgins dismissed the assault charge. Haywood blames Detective Orlando and County prosecutors for filing what they should have known to be false charges because he was innocent.

### III. Issues

A. **DA Office as Party:** Whether the District Attorney's Office is a person subject to suit under [Section 1983?](#)

---

[1] Haywood received three meals per day, does not allege otherwise, and did not starve because he could not order snacks from the commissary.

B. **Official Capacity Claims:** Whether Haywood's official capacity claims should be dismissed for failing to allege facts that support a *Monell* claim against Monroe County?

C. **Grievance Remedies:** Whether Haywood has a constitutional right to an inmate grievance remedy?

D. **RHU Punishment:** Whether Haywood states a constitutional claim for being placed into the Jail's Restrictive Housing Unit (RHU)?

E. **DB Hearing:** Whether Haywood states a constitutional claim because the jail's disciplinary hearing board found him guilty?

F. **Failure to Train:** Whether Haywood states a failure to train claim against the Monroe County District Attorney's Office?

G. **Prosecutorial Immunity:** Whether ADAs Rogers and Bernal have absolute prosecutorial immunity from suit?

H. **Witness Immunity:** Whether Detective Orlando has absolute witness immunity from suit?

IV. **Argument**

A. **Standard of Review for Rule 12(b)(6) Motion**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to

state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. At 230; Summers v. Borough, No. 3:18-cv-1246, 2019 U.S. Dist. LEXIS 11605, at *2-3 (M.D. Pa. Jan. 23, 2019) (Arbuckle, M.J.).

Leave to amend may be denied if amendment would be futile. Picarella v. Brouse, No. 1:16-CV-501, 2017 U.S. Dist. LEXIS 29211, at *25 (M.D. Pa. Mar. 2, 2017) (Conner, J.).

### B. Claims against Monroe County District Attorney's Office

Haywood states no claims against the Monroe County District Attorney's Office because it is not a suable entity for purposes of Section 1983 liability. Sheffer v. Centre County, No. 4:18-CV-2080, 2019 U.S. Dist. LEXIS 87966, at *13 (M.D. Pa. May 23, 2019) (Brann, J.) (Centre County District Attorney's Office not suable entity under §1983).

### C. Monroe County Claims

Monroe County is not a separately named defendant but Haywood noted in his complaint that he sues all defendants in both their individual and official capacities. Since an official capacity suit against Monroe County

5

employees is a lawsuit against Monroe County itself, the County is arguably a defendant. *Murray v. Keen*, No. 4:13-CV-258, 2017 U.S. Dist. LEXIS 146296, at *5 (M.D. Pa. Sep. 11, 2017) (Brann, J.).

However, as this court noted in the *Murray case*, no *Monell* claim can be stated against a County defendant unless the plaintiff identifies an unconstitutional policy, practice, or custom of the County that deprived the plaintiff of his constitutional rights. Plaintiff does not identify such a policy or practice and Monroe County ADAs, when prosecuting criminal cases, act as state and not County officers. *Williams v. Fedor*, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (Vanaskie, J.). Thus, their practices are not attributible to Monroe County.

For these reasons, the defendants ask the court to dismiss all official capacity claims.

### D. Deprivation of Grievance Forms

Haywood blames the defendants for refusing to give him grievance forms. He wanted to "grieve" what he believed was an unfair disciplinary hearing.

Haywood cannot base a civil rights claim on the obstruction of his ability to file grievances because he has no constitutional right to a grievance procedure. *Williams v. Lacakwanna Cty. Prison*, No. 1:13-CV-

6

00849, 2015 U.S. Dist. LEXIS 104414, at *17 (M.D. Pa. Aug. 10, 2015) (Kane, J.).

### E. RHU Claims

Haywood complains that his disciplinary placement into RHU violated his right to due process because he was not guilty. He fails to state a 14th Amendment due process claim because he had no constitutional right to be housed in a particular housing block at the MCCF.

Prisoners do not have a constitutionally protected liberty interest in remaining in the general population. See *Sandin v. Conner*, 515 U.S. 472, 485, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995). Thus plaintiff cannot claim that his incarceration in the RHU, standing alone, establishes any violation of his Fourteenth Amendment due process rights. Unless plaintiff can prove that his confinement in disciplinary custody amounted to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 485, his transfer from general population to the RHU implicates no constitutional protections. *Griffin v. Vaughn*, 112 F.3d 703, 706-8 (3d Cir. 1997) (holding that confinement in an RHU for up to 15 months without any pre-transfer hearing implicated no protected due process interest); *Acosta v. McGrady*, CIVIL ACTION NO. 96-2874, 1999 U.S. Dist. LEXIS 3191, at *11-12 (E.D. Pa. Mar. 22, 1999).

7

Hayward alleges in conclusory fashion that he suffered an "atypical hardship", using these keywords to support a claim. However, he offers no allegations to support the conclusion that he suffered an atypical hardship inconsistent with the characteristics of a normal prison life. For this reason, he does not state a 14th Amendment claim.

F.   **Due Process at Disciplinary Board Hearing**

Haywood has no constitutional claim because of his dissatisfaction with the outcome of his disciplinary board hearing.

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306.  Inmates often invite courts to find violations of due process rights based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill,

9

472 U.S. 445, 454-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review. As the Third Circuit commented: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long

as the inmate was granted a hearing and an opportunity to rebut the charges); Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). Here, Haywood was involved in a fight, was charged and the assault charge survived a preliminary hearing at which Haywood had the opportunity to challenge the claims. While there may be a dispute as to who instigated the fight, there were enough facts to support a charge of misconduct.

There is one final reason why Haywood fails to state a due process claim for his disciplinary "conviction." The punishment was his placement into RHU. He had no protected liberty interest in staying out of RHU and remaining in the general population. That is, his placement in disciplinary segregation did not implicate a sufficient legal interest to trigger specific substantive due process protections.

It has been held that disciplinary proceedings which simply result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to a substantive due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement); Muchler v. Smith Bail Bonds, LLC, No. 3:15-CV-0093, 2016 U.S. Dist. LEXIS 69344, at *14-15 (M.D. Pa. May 25, 2016) (Nealon, J.)

11

**F. Training Claim**

Haywood blames the DA's office for failing to train its prosecutors. Of course, the claim is moot if the DA's Office is properly dismissed as a defendant because it is not a "person" under Section 1983. However, even if the office remained in the case, there are two reasons why Haywood fails to show a prima facie case for failure to train.

First, Assistant DA's are trained in the law, equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment even before they start work as prosecutors. They went to law school, passed the bar exam, are licensed, and are required to satisfy continuing-education requirements. Therefore, there is no duty to train prosecutors to follow constitutional norms. *Connick v. Thompson, 563 U.S. 51, 52, 131 S. Ct. 1350, 1355 (2011)*.

Second, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). Without notice that a course of training is deficient, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick v. Thompson, 563 U.S. 51, 52, 131 S. Ct. 1350, 1354 (2011)*. Haywood has no basis to claim a pattern of

unconstitutional behavior that would support a failure to train claim and includes no such allegations in his complaint.

### G. Absolute Prosecutorial Immunity—ADAs

Assistant District Attorneys Rogers and Bernal have absolute prosecutorial immunity for their roles in prosecuting the assault charges.

It is well settled that prosecutors enjoy absolute immunity for actions "intimately associated with the judicial phase of the criminal process …" *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial'…and is properly raised in a Rule 12(b)(6) motion to dismiss." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations omitted). "[W]hether a prosecutor is entitled to absolute immunity for his… conduct depends on the function the prosecutor was performing." *Segers v. Williams*, 12 F. Supp. 3d 734, 738 (E.D. Pa. 2014). As such, a prosecutor is absolutely immune from suit for actions he performs in a judicial or quasi-judicial capacity, but "not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208 (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)); *Sheffer v. Centre County*, No.

4:18-CV-2080, 2019 U.S. Dist. LEXIS 87966, at *21-22 (M.D. Pa. May 23, 2019) (Brann, J.).

### H. Immunity for County Detective Orlando

Detective Orlando has absolute testimonial witness immunity for his testimony at Haywood's criminal hearings.

Haywood blames Orlando for testifying untruthfully in the criminal proceedings before Judges Krawitz and Higgins. However witnesses who testify in judicial proceedings are absolutely immune from any liability for such testimony. *Barren v. Pa. State Police*, Civil Action No. 14-134J, 2014 U.S. Dist. LEXIS 132796, at *15 (W.D. Pa. Aug. 20, 2014).

The shield of witness immunity is not even pierced by allegations of perjury. For example, in *Briscoe v. La Hue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983), the Supreme Court held that a police officer who was sued under 42 U.S.C. § 1983, by a criminal defendant for allegedly giving perjured testimony was held to be absolutely immune from suit as the police officer came within the common law doctrine of witness immunity. As one court has held, "Police officers have the same absolute immunity as lay witnesses in testifying at trial or before a grand jury. As with any witness testifying under oath, the penalty for false testimony is

14

potential prosecution for perjury, not civil liability. Barren, 2014 U.S. Dist. LEXIS 132796, at *16.

## I. Staff Claims

Although dealt with earlier, a few comments on the claims against individual MCCF employees.

Haywood sues Warden Haidle because he is "legally responsible" for everything that happens at the MCCF. This is an improper respondeat superior claim, as noted above.

Haywood blames Officer Armond for denying him a grievance form, which is not a constitutional claim. See *supra.*

Haywood blames Lt. McCoy for deciding he was guilty of misconduct but this raises no constitutional claims, especially given that Haywood had the opportunity to challenge these claims.

## V. Conclusion

The defendants ask the Court to grant their motion and dismiss the plaintiff's complaint without leave to amend.

                                        **NEWMAN WILLIAMS**
                                        By:  s/ Gerard J. Geiger, Esquire
                                             Attorney I.D. # PA 44099

Date: June 14, 2019

## Certificate of Service

I hereby certify that, on this date, I served the pro-se plaintiff listed below with a copy of this document at the following address:

DAVID HASSAN ALI HAYWOOD
#NM9822
**SPECIAL MAIL - OPEN ONLY IN**
**THE PRESENCE OF THE INMATE**
SCI – Benner Township
301 Institution Drive
Bellefonte, PA 16823

                            **NEWMAN WILLIAMS**
                            By:  s/ Gerard J. Geiger, Esquire
                                Attorney I.D. # PA 44099

Date: June 14, 2019