# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HASSAN ALI HAYWOOD, | No. 4:18-CV-00610 |
| Plaintiff, | (Judge Brann) |
| v. | |
| CO MARTYNOWICZ, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### FEBRUARY 19, 2020

Plaintiff David Hassan Ali Haywood, a prisoner presently confined at the State Correctional Institution at Benner in Bellefonte, Pennsylvania, filed a second amended complaint pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, violations of Plaintiff's First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights related to disciplinary sanctions and criminal charges filed against him resulting from a prison incident while he was incarcerated at the Monroe County Correctional Facility.[1] Presently before the Court is Defendants' motion to dismiss, which is ripe for disposition.[2] For the reasons that follow, the Court will grant the motion to dismiss.

---

[1] ECF No. 55.
[2] ECF No. 66. Defendants initially filed a motion to dismiss and supporting brief. ECF Nos. 64, 65. For reasons unknown, they filed a second set of these documents a few days later. *See* ECF Nos. 66, 67. The arguments contained in the motions and supporting briefs are substantially similar.

1

I. **BACKGROUND**

Plaintiff alleges that at all times relevant to the second amended complaint, he was incarcerated at the Monroe County Correctional Facility ("MCCF").[3] On August 4, 2016, Plaintiff was involved in an altercation or fight with fellow inmates.[4] Plaintiff alleges that he was the victim of an assault; however, Defendant Corrections Officer Martynowicz charged him with a misconduct violation for his involvement in the fight.[5] A disciplinary board hearing was held, where Plaintiff maintained his innocence and testified that the other inmates had attacked him.[6] Defendant Deputy Warden Joseph McCoy reviewed the video of the incident and determined that Plaintiff was guilty of some of the misconduct charges, including fighting, entering another inmate's cell, disorderly conduct, and creating a minor disturbance, but that he was not guilty of assault with the intent to injure or maim.[7] The disciplinary board sentenced him to thirty-seven days in the restricted housing unit ("RHU").[8] The disciplinary ruling explained that Plaintiff has the,

> right to appeal the Board's findings and action taken. The appeal must be made within five (5) days from the below date. An appeal form may be requested from the Classification Coordinator. The appeal should be made to the Warden in writing and contain specific reasons for the appeal."[9]

---

[3] ECF No. 55 at 3.
[4] *Id.* at 5.
[5] *Id.* at 6.
[6] *Id.* at 6, 18-23.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 22.

2

Plaintiff alleges that he is innocent of the misconduct report and disciplinary ruling, and has thus sued CO Martynowicz, who drafted the misconduct report, and Defendant McCoy, who issued the ruling on the misconduct charges. Plaintiff attaches to the second amended complaint numerous exhibits related to his misconduct charge and disciplinary hearing, including the disciplinary hearing testimony summaries, ruling, incident report, and inmate requests.

After his disciplinary hearing, Plaintiff sought to challenge the disciplinary finding and sanction, but alleges that Defendant Sergeant Armond denied him a grievance form.[10] Plaintiff also expressed directly to Defendant Warden Haidle that he was innocent of the misconduct ruling and that he would like to challenge it, but alleges that Warden Haidle similarly refused to provide him with a grievance form.[11]

According to Plaintiff, while he was in the RHU, he was denied phone and visitation privileges, denied access to the commissary "causing him to starve," and was cuffed and shackled during recreation, showering, and using the law library.[12] Plaintiff was also placed in administrative segregation for three weeks after the completion of his time in the RHU.[13] Plaintiff alleges that it was a total of two months before he returned to general population.[14]

---

[10] *Id.* at 7-8.
[11] *Id.* at 8.
[12] *Id.* at 6-7.
[13] *Id.* at 7.
[14] *Id.*

On May 5, 2017, criminal charges for inciting a riot and assault were filed against Plaintiff in the Monroe County Court of Common Pleas after an investigation by Defendant Detective Mario Orlando.[15] Detective Orlando was the affiant on the criminal complaint, which provides, in pertinent part:

> I, your affiant, Detective Mario Orlando of the Monroe County Office of the District Attorney, was assigned to investigate an assault that occurred on 08/04/2016 at approximately 1909 hours in the C-United of the Monroe County Correctional Facility located in Hamilton Township, Monroe County, Pennsylvania.
>
> During my investigation I read a report prepared by Deputy Warden Joseph McCOY which states that while watching video footage he observed Joseph P. KENNEDY, Kenneth Keith HALSEY, Zaheem Abdul SMITH, Malik Dion CLARK, Darvent E. CUMMINGS and Darryl MORGAN, inmates that reside at Monroe County Correctional Facility enter cell C-6. David Hassan HAYWOOD, an inmate that resides at Monroe County Correctional Facility enters cell C-6 and the assault ensues. The incident spills out of cell C-6 and continues on the top tier in front of cell C-6. CLARK, KENNEDY, MORGAN, CUMMINGS, and HAYWOOD can all be seen striking each other with closed fists.
>
> I was able to obtain and review a copy of the video footage which was captured on the surveillance video system of the Monroe County Correctional Facility. The footage shows and confirms what Deputy Warden McCOY stated in his report.
>
> Based on the above facts and findings, I respectfully request that the defendant be required to answer to the charges that I have set forth..[16]

The criminal charges were approved of and prosecuted by Defendants Monroe County Assistant District Attorneys Curtis Rogers and Matthew Bernal.[17] At the

---

[15] *Id.* at 8.
[16] *Id.* at 29-32.
[17] *Id.* at 8-9.

preliminary hearing, Plaintiff alleges that Detective Orlando testified on cross-examination that the video evidence of the prison incident demonstrated that Plaintiff was the victim and that he did not incite a riot.[18] As a result of that testimony, the riot charge was dismissed[19]. The assault charge was bound over but was later dismissed by Common Pleas Judge Stephen M. Higgins on December 1, 2017.[20]

As a result of these dismissals, Plaintiff alleges that Defendant Detective Orlando and Defendants Rogers and Bernal should have known the charges to be false. To support this claim, Plaintiff attaches exhibits to the second amended complaint related to these criminal proceedings including the criminal complaint, criminal proceeding docket sheet, and documents related to his underlying criminal case that was the cause for his initial pre-trial detention at MCCF.

The defendants have moved to dismiss the claims against them, primarily because the claims are either not cognizable or because Plaintiff sought relief from defendants who are immune from suit.[21] Under this Court's Local Rules, Plaintiff had until July 8, 2019, to file a brief in opposition to the motion.[22] After the time for filing an opposition brief expired, Plaintiff filed a motion for an extension of time to

---

[18] *Id.* at 9.
[19] *Id.*
[20] *Id.*
[21] *See* ECF No. 67.
[22] *See* Local Rule 7.6; ECF No. 4 (standing order explaining Local Rule 7.6).

5

file an opposition brief, which the Court granted.[23] Plaintiff then had until August 30, 2019 to file an opposition brief. Plaintiff failed to file a brief in opposition to the motion despite the extension. The Court, therefore, issued Plaintiff a notice that (1) advised him that a failure to oppose the motions would result in the Court deeming the motions unopposed pursuant to Local Rule 7.6, (2) directed Plaintiff to file a brief in opposition to the motions within fourteen (14) days from the date of the Court's order, and (3) notified Plaintiff that a failure to comply with the Court's order and to file a brief in opposition to the motions to dismiss would be deemed a failure to prosecute and comply with a court order, subjecting his complaint to dismissal pursuant to Federal Rule of Civil Procedure 41(b).[24] Despite that order providing Plaintiff with additional time in which to oppose the motion, Plaintiff has failed to file any opposition brief or otherwise communicate with the Court.

II.  **STANDARD OF REVIEW**

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[25] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[26] The issue in a

---

[23] See ECF Nos. 71 (motion), 72 (order).
[24] See ECF No. 73.
[25] See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[26] See Erickson v. Pardus, 551 U.S. 89, 94 (per curiam).

6

motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[27]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[28] The court need not accept unsupported inferences,[29] nor legal conclusions cast as factual allegations.[30] Legal conclusions without factual support are not entitled to the assumption of truth.[31]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that

---

[27] *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).
[28] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).
[29] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).
[30] *Twombly*, 550 U.S. at 556.
[31] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

is plausible on its face."[32] A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[33] The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[34]

## III. DISCUSSION

The Local Rules provide that any party who fails to file a brief in opposition to a motion to dismiss "shall be deemed not to oppose such motion." *See* Local Rule 7.6. The United States Court of Appeals for the Third Circuit has explained that, "if a party fails to comply with [Local Rule 7.6] after a specific direction to comply from the court," dismissal may be appropriate without analysis of the underlying motion.[35]

Here, the Court has issued a specific direction to Plaintiff to file an opposition to the motion to dismiss and explained to Plaintiff that a failure to do so would result in the motion being deemed unopposed. Plaintiff has been put on notice of Local Rule 7.6 both in the Court's prior order as well as the Court's standing practice order, which was sent to Plaintiff at the commencement of his lawsuit.[36] In light of

---

[32] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[33] *Iqbal*, 556 U.S. at 678.
[34] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).
[35] *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).
[36] *See* ECF Nos. 4 (standing practice order), 73 (order directing Plaintiff to comply with Local Rule 7.6 and to file opposition briefs to the motions).

8

Plaintiff's repeated failures to oppose the motion to dismiss or to otherwise communicate with the Court, it may well be that Plaintiff does not intend to oppose it.

Indeed, after reviewing the motion to dismiss, the Court finds good cause for granting it pursuant to Federal Rule of Civil Procedure 12(b)(6) because the allegedly wrongful actions complained of simply do not rise to cognizable constitutional claims or Plaintiff seeks relief from defendants who are immune from suit.

First, as to Defendant Monroe County District Attorney's Office, a county prosecutor's office is not a suable entity in a § 1983 civil action.[37] Therefore, Plaintiff cannot state a claim against the District Attorney's Office upon which relief may be granted, and this Defendant must be dismissed.

Plaintiff's claims against the Monroe County Assistant District Attorneys Curtis Rogers and Matthew Bernal also fail, because they are both are immune from suit. It is well settled that prosecutors enjoy absolute immunity for actions

---

[37] *See Thompson v. Police Dep't of Phila.*, No. CIV.A. 10-6083, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011) ("The United States Court of Appeal for the Third Circuit has long held that local prosecutorial offices are not legal entities separate from the local governments of which they are a part and, consequently, that they may not be sued under § 1983.") (citing *Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983.")); *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("The Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability[.]").

9

"intimately associated with the judicial phase of the criminal process."[38] "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial' . . . and is properly raised in a Rule 12(b)(6) motion to dismiss."[39] "[W]hether a prosecutor is entitled to absolute immunity for his . . . conduct depends on the function the prosecutor was performing."[40] A prosecutor is absolutely immune from suit with respect to actions performed in a judicial or quasi-judicial capacity, but "not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings."[41]

In his second amended complaint, Plaintiff alleges constitutional violations against the Defendant Assistant District Attorneys for their role in bringing charges against Plaintiff and prosecuting those charges against him in court. These actions fall within "initiating and conducting judicial proceedings." They are, therefore, both immune from suit. As such, they must be dismissed.

Next, as to Defendant Detective Orlando, the allegations of the second amended complaint and appended exhibits demonstrate that he is entitled to qualified immunity for his actions related to the criminal complaint filed against

---

[38] *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). *See also Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").
[39] *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations omitted).
[40] *Segers v. Williams*, 12 F. Supp. 3d 734, 738 (E.D. Pa. 2014).
[41] *Odd*, 538 F.3d at 208 (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)); *Sheffer v. Centre County*, No. 4:18-CV-2080, 2019 U.S. Dist. LEXIS 87966, at *21-22 (M.D. Pa. May 23, 2019).

Plaintiff.[42]  As the Third Circuit has explained, questions regarding the application of qualified immunity should be addressed as early as possible in the litigation proceedings:

> "[T]he qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  An essential attribute of qualified immunity is the "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law."  The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service.  "[E]ven such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this can be peculiarly disruptive of effective government.'".
>
> Because qualified immunity bestows immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  The Supreme Court has admonished that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."  Thus, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[43]

"[T]o resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff has shown the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the official's

---

[42]  Defendant Orlando also argues that he is entitled to witness immunity for the testimony he provided during Plaintiff's preliminary hearing.  Because Plaintiff does not allege a constitutional violation based on Defendant Orlando's preliminary hearing testimony, such an argument is inapposite to facts and legal theories of this case.

[43]  *Thomas v. Independence Twp.*, 463 F.3d at 291 (3d Cir. 2006) (internal citations omitted).

11

conduct."[44]  Here, Plaintiff claims that Detective Orlando initiated criminal proceedings against him without probable cause, in violation of the Fourth Amendment.  In the context of such a claim, the Third Circuit has explained that a finding of probable cause would be a complete defense to this constitutional claim, and, accordingly, would entitle Detective Orlando to qualified immunity.[45]

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[46]  "[A] court may conclude that probable cause exists as a matter of law 'if the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'"[47]  "A 'common sense' approach [must be taken] to the issue of probable cause' and a determination as to its existence must be based on the 'totality of the circumstances.'"[48]

Plaintiff has attached documents to the second amended complaint that detail the sort of cause relied upon for the issuance of the criminal complaint against Plaintiff.  Specifically, in the affidavit to support the criminal complaint, Defendant Orlando explained that he relied on a report prepared by Deputy Warden McCoy and

---

[44] *Goodwin v. Conway*, 836 F.3d 321, 326-27 (3d Cir. 2016).
[45] *Id.*
[46] *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).
[47] *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).
[48] *Id.*

a video showing Plaintiff entering a cell, a fight developing, which "spills out of C" and continues onto the top tier where Plaintiff is seen striking other inmates with closed fists. This appears to be ample cause to support the issuance of the criminal complaint.

As Defendant Orlando points out in his brief, the fact that Plaintiff argues that he was innocent because he did not start the altercation does not necessarily mean that probable cause for the charge did not exist. Indeed, after the preliminary hearing, the magisterial district judge bound over the assault charge, concluding that there was enough evidence to support the charge. Because the documents attached to the second amended complaint demonstrate that probable cause existed for the issuance of the criminal complaint, Detective Orlando is entitled to qualified immunity and must be dismissed.

Next, as to the prison misconduct report, disciplinary ruling, and sanction, Plaintiff first argues that he is innocent of misconduct report and ruling.[49] It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."[50] A prison disciplinary determination comports with due process if it is

---

[49] Plaintiff does not appear to argue that he did not receive the procedural safeguards outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). As such, the Court will not address them.

[50] *Id.* at 556.

13

based on "some evidence."[51] This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence.[52] Disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision.[53]

A review of the documents that Plaintiff attached to his second amended complaint as well as the allegations contained therein demonstrates that there is "some evidence" in the record to support the disciplinary ruling that Plaintiff was guilty of fighting, entering another inmate's cell, disorderly conduct, and creating a minor disturbance. For instance, included in that record is the misconduct report, which provides that CO Martynowicz observed Plaintiff fighting with Inmates Morgan and Cummings, including throwing punches and pushing each other into the wall. Further, Defendant McCoy told Plaintiff that he had reviewed the video footage of the incident and that Plaintiff was guilty based on what was depicted in the video.

Both the misconduct report and the review of video footage constitute "some evidence" to support a finding of guilty for the misconduct charges. As such,

---

[51] *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").
[52] *See id.* at 455.
[53] *Hill*, 472 U.S. at 457; *Elkin v. Fauver*, 969 F.2d 48 (3d Cir. 1992); *Thompson v. Owens*, 889 F.2d 500 (3d Cir. 1989).

Plaintiff has failed to state a claim upon which relief may be granted as to his disciplinary hearing ruling, and this claim must be dismissed.

Plaintiff has also sued Defendants Haidle and Armond because they have allegedly refused to provide him with grievance forms so that he could appeal his disciplinary ruling and sanction. At the outset, the Court notes that on the disciplinary ruling, Plaintiff was advised that he has the "right to appeal the Board's findings and action taken," that [a]n appeal form may be requested from the Classification Coordinator," and that "[t]he appeal should be made to the Warden in writing and contain specific reasons for the appeal." Plaintiff makes no allegation that he followed this procedure and sought an appeal form from the Classification Coordinator. But even if he had, Plaintiff has no constitutionally protected right to a grievance procedure.[54] Therefore, to the extent that Plaintiff attempts to bring a constitutional claim regarding his ability to file a grievance, any such claim fails and must be dismissed.

Finally, as to Plaintiff's disciplinary sanction of time in the RHU, such a claim similarly fails because prisoners do not have a constitutionally protected interest in

---

[54] *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Speight v. Sims*, 283 F. App'x 880, 881 (3d. Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."); *Scott v. Derose*, 4:15-cv-2379, 2016 WL 4440309 (M.D. Pa. Aug. 23, 2016).

remaining in the general population.[55] Plaintiff cannot claim that his incarceration in the RHU, standing alone, establishes any violation of his Fourteenth Amendment due process rights. Instead, he must demonstrate that his confinement in disciplinary custody amounted to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," in order to establish a constitutional claim.[56] "[T]he baseline for determining what is 'atypical and significant'—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law . . . '[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.'"[57]

In the second amended complaint, Plaintiff may have alleged that he has suffered an "atypical hardship," however that allegation is conclusory and not supported by factual allegations such as an explanation of how the hardship he suffered are inconsistent with the ordinary incidents of prison life. Further, the Court notes that other courts have determined that incarceration in the RHU for period of

---

[55] *See Sandin v. Conner*, 515 U.S. 472, 485, (1995); *see also Drexel v. Vaughn*, 1998 WL 151798 at *6-7 (E.D. Pa. April 2, 1998).

[56] *Sandin*, 515 U.S. at 485. *See also Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (holding that confinement in the RHU for up to fifteen months without any pre-transfer hearing implicated no protected due process interest); *Acosta v. McGrady*, No. 96-cv-2874, 1999 WL 158471, at *11-12 (E.D. Pa. Mar. 22, 1999).

[57] *Griffin*, 112 F.3d at 706 (quoting *Sandin*, 515 U.S. at 485).

16

months has been held not to be an atypical and significant hardship.[58] As such, Plaintiff has failed to state a claim upon which relief may be granted, and any claim he raises regarding his incarceration in the RHU must be dismissed.

Generally, "plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[59] Because the Court cannot conclude that an opportunity at amendment would be futile, the Court will grant Plaintiff an opportunity to amend his complaint limited to curing the pleading defects identified in this memorandum opinion.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss, dismiss the second amended complaint accordingly, and grant Plaintiff leave to file an amended complaint.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[58] *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement); *Muchler v. Smith Bail Bonds, LLC*, No. 3:15-CV-0093, 2016 WL 3035303, at *14-15 (M.D. Pa. May 26, 2016).
[59] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).